Christopher Runyan and Jennifer Centers (pro-se)
6829 Taft Court
Arvada, Colorado 80004
Telephone:   (720) 339-1167

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2007 DEC 28  PM 12: 24

GREGORY C. LANGHAM
CLERK

BY_____DEP. CLK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. **'07 - CV - 0 2 7 1 3 -ReB-KLm**

Christopher Lee Runyan and
Jennifer Ann Centers,

Plaintiffs,

v.

The Corporation of the President of the Church of Jesus Christ of Latter-day Saints,
The Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints,
Bruce LeRoy Christensen,
Melvin Russell Ballard Jr. (Apostle),
Larry Peterson, and
Christopher Beesley

Defendants,

---

## COMPLAINT

---

### PARTIES

1. The Plaintiffs, Jennifer Ann Centers (herein after referred to as "Jennifer" or "Jennifer Centers") and Christopher Lee Runyan (herein after referred to as "Chris" or "Chris Runyan") are both citizens of Jefferson County, Colorado who presently reside at the following address: 6829 Taft Court, Arvada, Colorado, 80004

2. The Corporation of the President of the Church of Jesus Christ of Latter-day Saints is a Utah corporation sole whose headquarters is located in Salt Lake city County, Utah, at the following address:   50 East South Temple 2WW, Salt Lake City, Utah 84150.

3. The Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints   is a Utah corporation sole whose headquarters is located in Salt Lake City County, Utah, at the following address: 50 East South Temple 2WW, Salt Lake City, Utah 84150.

4. Regarding paragraphs 2 and 3:

    a. Together, The Corporation of the President of the Church of Jesus Christ of Latter-day Saints and The Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints are hereinafter referred to as "the Mormon Church" or "The Church."

    b. The Church at large, its membership, its local organizations and its lay clergy, is also included by reference to "the Mormon Church" or "the Church".   The local leaders of the Church are hereinafter referred to by name, position, or "clergy".

5. The Defendant, Bruce LeRoy Christensen is a citizen of Utah County, Utah who works at the following address: KSL Television, 55 N. 300 W., Salt Lake City, Utah 84180

6. The Defendant, Melvin Russell Ballard, Jr. (hereinafter referred to as "Elder Ballard" or "Apostle Ballard") is a citizen of Utah, employed by the Church who works at the following address: 50 East North Temple Street, Salt Lake City, Utah 84150 and is a member of one of the highest "quorums" of the Mormon Church which makes policies and procedures.

7. The Defendant, Larry Peterson, a Bishop and Therapist in Colorado, is a citizen of Jefferson County, Colorado who presently resides at the following address: 6475 Independence Ct., Arvada, Colorado 80004

8. The Defendant, Christopher Beesley, a member of the clergy in San Diego, is a citizen of San Diego County, California, who works at 110 W. A St. #1100, San Diego, California 92101

9. Hereafter all the parties named in paragraphs 2-6 are included in "the Defendants"

## JURISDICTION AND VENUE

10. Jurisdiction is proper under U.S.C. § 1332(a)(1) as the matter in controversy exceeds the amount of $75,000.00 and this action is between citizens of different states.

11. Venue is proper in this District.   Both the Plaintiffs and one of the Defendants reside in Colorado, the Church is a foreign Corporation licensed in Colorado and a substantial number of the damages, especially in the past year, have been experienced by the Plaintiffs in Colorado.

## INTRODUCTION AND BACKGROUND

12. A unique and complex story is behind this case which may make it difficult to follow, although at its core this case is very simple.   Driven by their shared religious beliefs, the Defendants acted individually and collectively, committing unlawful and tortuous acts, including but not limited to the intentional acts to suppress Jennifer Centers' memories of child sexual abuse.   Later, the Defendants aided, facilitated, participated (or participated as enablers), both directly and indirectly in attempts to blackmail and extort the Plaintiffs, Chris and Jennifer to cover up their tortuous acts and obtain indemnification.

13. The Defendants are leaders, clergy, public figures and/or employees of the Mormon Church.

14. Since rejecting their former religious beliefs, Chris and Jennifer's current views regarding religion are significantly different from the Defendants.   Consequently, the Defendants have harassed Chris and Jennifer in spite of repeated requests to be left alone.

15. The facts of this case cover many years, however prior to December of 2006 and May of 2007 the Plaintiffs did not have sufficient information about the joint actions of the Defendants, their conspiratorial acts or the implications and significance of their intentional acts.   The Defendants concealed and failed to disclose information that was necessary for the Plaintiffs to pursue civil charges.   This is true regarding both Plaintiffs and specifically true regarding the Plaintiff Jennifer Centers, where the Defendants conspired to convince Jennifer there was no merit to her allegations, that she was mentally ill and that she simply needed to recant her story and "let it go".

16. The Mormon Church both lacked AND lacks appropriate policies and procedures to address allegations of child abuse, maintain proper privacy and confidentiality obligations as well as respect the desires of someone to BE LEFT ALONE by their church.   Furthermore, the Mormon Church subverts any existing policies and procedures for their own purposes.

17. In summary, the Defendants consistently and cooperatively worked to cover up the abuse of Jennifer Centers.   They worked together to discredit Jennifer as well as attempt to compel Jennifer to deny or recant her memories.   Additionally, the Defendants harassed Chris and Jennifer during and since their departure from the Church, including providing aid, support and information to blackmailers as well as participating as enablers.   Since Chris and Jennifer refused to comply with the blackmailers' demands, many of the threats have been fulfilled with the Defendants' assistance.

## FACTUAL ALLEGATIONS

18. In 1991 Jennifer Centers was a student in Utah and began remembering events of abuse in her childhood.

19. Therapy was provided through the clergy of Jennifer's BYU student congregation in Utah.

20. Jennifer talked with her Uncle, employed by the Boy Scouts of America, about her memories of abuse.   It is Jennifer's information and belief that her Uncle contacted the area director of the Boy Scouts and informed them of Jennifer's memories upon learning that Bruce Christensen was volunteering with the local Mormon troop in Virginia.

21. In early December 1991 the local bishop in Arlington, Virginia and the area director of the Boy Scouts contacted Jennifer about her memories of abuse.   Soon after that, at the direction of the area director of the Boy Scouts Bruce Christensen was prohibited from further volunteer service and was immediately "reassigned" in his work with the local Mormon congregation in Virginia.

22. Jennifer told her father about her memories of abuse in late December 1991.   Immediately after that Bruce Christensen contacted high officials in the Mormon Church including Apostle Dallin Oaks and Apostle Ballard who took action helping Bruce Christensen "fix the problem".

23. The policies and procedures of the Mormon Church required the local leaders in Virginia to handle any ecclesiastical censure of Bruce Christensen, convening a "church court" and subjecting Bruce Christensen to disciplinary action on a local level.

24. Additionally since all church clergy are mandatory reporters, the Mormon Church's policies and procedures mandated reporting suspected abuse to the local state authorities.

25. The Church did not follow policies and procedures.   Instead, Jennifer was told by her BYU, Utah clergy she needed to undergo a forensic psychological exam by Robert J. Howell, Ph.D. who worked at BYU.   They told Jennifer she had to comply with the exam to handle things with her father and the exam was essential.

26. Jennifer's clergy in Utah and Robert Howell told her that the results of the exam would determine her mental stability and also told her decisions on how to proceed with Bruce Christensen, employed as the President and CEO of PBS, depended on the results of Robert Howell's investigation.

27. Robert Howell told Jennifer that she was smart, needed to stop obsessing about her dad, get some help to forget it and "move on."

28. Apostle Ballard and Robert Howell consulted regarding Robert Howell's examination of Jennifer Centers.   Jennifer was unaware of any consultation and was not told of Apostle Ballard's role.

29. Jennifer discovered Apostle Ballard's involvement because the Church provided Shawn Centers a copy of Robert Howell's report for use in his domestic case against Jennifer.

30. Soon after Robert Howell finished his exam, Jennifer's Utah clergy contacted her and told her

that Apostle Ballard wanted to talk with her about her father, Bruce Christensen.

31. It is extremely unusual for a member of the Mormon Church to meet with an apostle.  In the Mormon Church, Apostles are considered to be "Special Witnesses" of Christ.  They are divinely called and communicate God's words directly to those with whom they speak.  Apostles reputedly have a special ability to discern absolute truth by the power of the Holy Ghost and their words are considered to be "gospel truth".  According to Jennifer's account of the meeting:

    a.  Without asking Jennifer about anything she remembered, without any questions about what she remembered or how, Apostle Ballard told Jennifer that nothing was to be pursued regarding her father stating he [Ballard] was to be "held accountable" for his decision.  Apostle Ballard went on to say that he had talked with her father and that in "cases like this" the victim frequently recants later saying they were in error about their allegations.  Apostle Ballard suggested told Jennifer that her case was such a case.

    b.  Apostle Ballard then spent the rest of the hour counseling Jennifer to create a close bond with her family, specifically with her father and to forget it and "move on." Apostle Ballard closed their meeting by giving Jennifer an "apostolic blessing".  In Mormon culture it was as if Jennifer had been offered a blessing from Christ himself. Jennifer was "blessed" and again counseled to forget it and "move on."

32. Although Jennifer wanted to continue with the counselor she had been working with who was not affiliated with BYU.  Apostle Ballard directed Jennifer stop receiving counseling from that counselor and receive counseling from employees of BYU, a private Church university.

33. Jennifer still believed in the "inspired" counsel of Apostle Ballard and tried to move forward with her life and repair things as she could.  She could not bring herself to recant.  Later, Jennifer's father, Bruce Christensen, and her mother Barbara, moved from Virginia to Utah where Bruce Christensen was employed by BYU as a dean, then later at Bonneville Communications, a Mormon Church owned corporation.

34. After their move to Utah, Jennifer's parents continuously pressured Jennifer to provide a letter stating that her father, Bruce Christensen, was not guilty of what Jennifer had accused.  This occurred through Jennifer's clergy and by her parents personally.  In that period, Jennifer met with Apostle Ballard two more times and spoke with him several times on the phone.  During all conversations she was advised to forget it", "let it go", "move on" and put it behind her; cultivate a close relationship with her family; rely on her father and her family and move forward in her relationships with her family.

35. Jennifer moved to Colorado in August 2000 and in 2002, Jennifer cut off contact with her father because he kept demanding a formal letter of retraction.

36. Jennifer began counseling with Larry Peterson, former head of the Church's social services in Colorado.   A position which gave Larry Peterson unusual access to the hierarchy of the Church.

37. Larry Peterson downplayed the abuse in Jennifer's history which she explained was still affecting her life and instead tried to get her to forget it and "move on" instead of dealing with the consequences of the abuse.

38. In the Spring of 2003 Jennifer Centers met Shawn Centers, moved to San Diego and Jennifer and Shawn Centers were married in the Mormon temple there in June 2003.

39. During the course of their marriage Shawn Centers became abusive.   At the time Jennifer was still a practicing member of the Mormon Church and so Jennifer once again went to the local clergy of the Mormon Church for help and guidance.

    a.  The clergy there minimized Shawn Centers' responsibility and told Jennifer that she needed counseling so that she could be a better wife.

    b.  The San Diego clergy told Jennifer to submit to the "will of the Lord", trust in the covenant of the sealing (Mormon marriage ceremony) and with faith, patience and obedience she would be blessed with a good marriage.

40. In spite of explanations of her history with her family, Jennifer's father had been "cleared" by a Mormon Apostle (Apostle Ballard) and was employed by a church owned company and Jennifer was encouraged and then pressured to re-connect with her father and family.   So finally Jennifer talked to her family again in April of 2005.

41. In June of 2006 Jennifer contacted the district attorney's office in San Diego.   Jennifer said she was leaving her husband, Shawn Centers, she was in fear of him including that he may file kidnapping charges, and notified that office and that office alone of her Colorado address.   Jennifer then left Shawn Centers and moved back to Colorado.

    a.  Jennifer moved in with her long-time friend, Chris Runyan and his family in Colorado.

    b.  Jennifer later discovered that her former counselor, Larry Peterson, was the "ordained clergy", a.k.a. bishop, of the local congregation where Chris Runyan lived.

    c.  Mormon congregations are organized by geography and "members" are assigned to a congregation based on where they live.

    d.  Larry Peterson contacted Jennifer's former clergy in San Diego and talked to them about Jennifer and Chris Runyan.

    e.  Without Jennifer's knowledge or consent, Shawn Centers was subsequently informed

by the San Diego clergy of Jennifer's address and location prior to this information being disclosed by Jennifer in the San Diego court proceedings.

    f.   Again, without Jennifer's knowledge or consent, the local clergy in San Diego (specifically Christopher Beesley) spoke to Shawn Centers, Mike Waters (Jennifer's "first" husband) and others, sharing privileged communications supporting Shawn Centers as he pursued Jennifer.

    g.   Jennifer rejected the teachings of the Mormon Church and is now an Atheist.

42. In 2003 Chris Runyan researched the truthfulness of the Mormon Church's history.

    a.   Based on his research, Chris Runyan rejected the teachings of the Mormon Church and subsequently espouses Atheism.

    b.   Since 2003 the Mormon Church contacted and harassed Chris repeatedly via telephone, email, letters, etc. through the Church in Colorado and their agents in spite of repeated requests by Chris to be left alone.

    c.   Chris clearly and repeatedly expressed his desire to be left alone by those in the Mormon Church, specifically the local congregation.   This was explicitly explained to Larry Peterson and other members of his congregation as well as his "superior" Stake President Robert Lewis.

    d.   Chris' clear requests to be left alone have been ignored.

43. During his separation and divorce from Jennifer Centers, Shawn Centers contacted many people including but not limited to the following individuals with the intention of finding negative and scandalous information (including declarations) that Shawn could use against Jennifer in the custody battle he was pursuing:

    a.   Jennifer's father, Bruce Christensen.

    b.   Mike Waters, Jennifer obtained an annulment from Mike Waters on March 15, 2000.

    c.   Kim Gorski, Chris' ex-wife.

    d.   Larry Peterson who discussed Chris and Jennifer's privileged communications with Shawn Centers and others on Shawn's behalf.

    e.   Christopher Beesley, a member of the San Diego clergy who had counseled with Jennifer about her abusive spouse and her marriage and what she should do to "save" said marriage.

44. Without Chris or Jennifer's knowledge or consent, Bruce Christensen provided private, personal, protected and privileged information directly and indirectly to Shawn Centers regarding

Jennifer Centers including at least one box of documents which he had committed to safeguard for Jennifer.

45. Without Chris and Jennifer's knowledge or consent, Larry Peterson and Christopher Beesley provided private, personal, protected and privileged information to Shawn Centers and others regarding Chris and Jennifer.

46. Without Chris and Jennifer's knowledge or consent, the Mormon Church in San Diego, Colorado and Utah provided Shawn Centers and others with private, personal, protected and privileged information regarding Jennifer Centers and Chris Runyan.

47. In the fall of 2006 with the information obtained from the Defendants and others, Shawn Centers coordinated a blackmail and extortion campaign against Chris and Jennifer. Chris and Jennifer are pursuing a separate civil case against Shawn Centers, et al in Colorado District Court, Jefferson County Colorado.

48. In addition to the threats and demands for and in behalf of Shawn Centers and Kimberly Gorski, Jennifer and Chris received threats and demands for and in behalf of Bruce Christensen and the Mormon Church.

49. The demand in behalf of the Church required Jennifer send a letter of indemnification to Apostle Ballard for any claims she had against the Mormon Church. Jennifer and Chris became aware after December 2006 that the demand was to cover up the Church's release of protected and privileged information.

50. Christopher Beesely, a member of Jennifer Centers' clergy in San Diego and a deputy attorney general of California, participated as an enabler and provided information, encouragement and support to Shawn Centers, Mike Waters and the other blackmailers.

51. Bruce Christensen, Jennifer's father and currently the CEO of KSL in Salt Lake City, participated as an enabler and provided information, encouragement and support to Shawn Centers, Mike Waters and the other blackmailers.

52. Melvin Russell Ballard, Jr., an apostle in the Mormon Church, participated as an enabler and provided information, encouragement and support to Shawn Centers and the other blackmailers. The participation, information, encouragement and support provided by Apostle Ballard was accomplished and coordinated in part through Bruce Christensen.

53. Larry Peterson, bishop in the Arvada Stake and former counselor of Jennifer Centers, participated as an enabler and provided information, encouragement and support to Shawn Centers and the other blackmailers.

54. Larry Peterson's statements to Shawn Centers and others became "public" and they were used

in Shawn Centers' divorce proceedings to defame Chris and Jennifer.   Personally and through his attorney, Larry Peterson has refused to retract or clarify his statements in spite of repeated requests.

55. At all relevant times, Bruce Christensen had a fiduciary relationship with Jennifer Centers. Chris did not have a fiduciary relationship with Bruce Christensen.

56. At all relevant times the remaining Defendants had fiduciary relationships with Chris and Jennifer.

57. At all relevant times the Mormon Church (including any and all of its leaders and agents) had a fiduciary relationship with Chris and Jennifer.

58. Chris and Jennifer put their trust in the Defendants to maintain privilege, to look out for their interests, to protect and help them.

59. Chris and Jennifer have clearly told the clergy of the Mormon Church they desire to be left alone.   However, Chris and Jennifer are still harassed by the Mormon Church, its representatives and agents.

60. Chris and Jennifer are considered "apostates" by the Mormon Church because they "deny the truthfulness of the gospel" according to the Mormon doctrine.   Many of the Mormon Church's actions were motivated by the current difference in the Defendants and the Chris and Jennifer's religious beliefs.   After noticing Chris and Jennifer in attendance at a meeting, Larry Peterson gave a "spontaneous" sermon wherein he looked directly at Chris and Jennifer and quoted scripture saying "apostates" would be "trampled under the feet of the righteous."

61. The extent of the Defendants roles and levels of involvement in the activities heretofore described resulted from the information and belief provided to Chris and Jennifer by the blackmailers' actions and the subsequent fulfillment of the blackmailer's threats in late 2006 and into 2007, after Chris and Jennifer refused to submit to the blackmailer's demands.

62. In late December of 2006 through May of 2007, Chris and Jennifer became fully aware of the communications, collaboration and conspiracy of the Defendants Bruce Christensen, Apostle Ballard, Larry Peterson, Christopher Beesley and the Mormon Church in addition to other Mormon clergy and Mormon Church employees and agents.

### FIRST CLAIM FOR RELIEF
#### Conspiracy

63. The Plaintiffs incorporate by reference the background information and factual allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

64. The Defendants conspired on at least two different occasions!   Bruce Christensen, Apostle Ballard and the Mormon Church (including its agents) conspired to cover up and suppress Jennifer's accusations and memories of abuse.   Years later Bruce Christensen, Apostle Ballard and the Church (including its agents) conspired to aid and assist Shawn Centers and the others who attempted to blackmail and extort Chris and Jennifer.

65. The Defendant's actions prevented disclosure, prosecution and civil litigation.   Those actions include but are not limited to:   failure to report incidents of abuse to law enforcement or child protection agencies; denial of abuse; aiding Bruce Christensen in evading detection, arrest and prosecution.

66. The Mormon Church (including its agents), Bruce Christensen and Apostle Ballard agreed or otherwise participated as enablers and conspired to aid and assist Shawn Centers and others who attempted to blackmail and extort Chris and Jennifer.   The Defendants provided information and support to Shawn Centers and others including but not limited to:   disclosure of protected and privileged information, violation of agreement and trust, providing of confidential records to discredit and harm Chris and Jennifer.

67. The Mormon Church through its officials and other Mormon Church leaders, breached their mandated duty and a duty of reasonable care by not only failing to maintain protected and privileged communications but by the intentional, conspiratorial dissemination of that information as well.

68. The Mormon Church adopted guidelines for maintaining confidentiality, handling victims of child sexual abuse and sex offenders.   Plaintiffs, Chris Runyan and Jennifer Centers are members of the class of people whom the guidelines were designed to protect.   Chris and Jennifer suffered as a result of the Church's intentional violation of those guidelines in addition to the violation of the laws of privilege in the state where Chris and Jennifer reside.

69. The Defendant's knew or should have known that their intentional, conspiratorial actions would result in harm.

70. As a result of the Defendant's conduct, the Plaintiffs have incurred and/or will continue to incur costs in an amount to be determined at trial.

71. The Defendants' conduct was the result of willful, reckless, conscious and outrageous acts. These intentional acts harmed the health, safety, welfare and reputations of Chris and Jennifer.   The Church's conduct is socially intolerable and Chris and Jennifer give notice of intent to seek exemplary damages.

## SECOND CLAIM FOR RELIEF
### Defamation of Character

72. The Plaintiffs incorporate by reference the background information and factual allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

73. The conduct of Larry Peterson and the other Defendants described in the previous paragraphs was completely unjustified and was intended to malign and defame the Chris and Jennifer's character as well as to inflict substantial harm against Chris and Jennifer.

74. As a result of the Defendant's conduct, the Plaintiffs have incurred and/or will continue to incur costs in an amount to be determined at trial.

75. The Defendants' conduct was the result of willful, reckless, conscious and outrageous acts. These intentional acts harmed the health, safety, welfare and reputations of Chris and Jennifer.  The Church's conduct is socially intolerable and Chris and Jennifer give notice of intent to seek exemplary damages.

## THIRD CLAIM FOR RELIEF
### Violation of Privilege

76. The Plaintiffs incorporate by reference the background information and factual allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

77. The Church, Apostle Ballard, Larry Peterson, Christopher Beesley and other Mormon Church leaders all violated privilege.   This violation occurred not only in contradiction to the rules of the Church itself but also in violation of the laws of the state of Colorado where Chris, Jennifer and Larry Peterson reside and where both the parishioner and the clergy must consent to the sharing of protected and privileged information.

78. The Defendants have also been involved in the violation of "medical" privilege directly and indirectly, some participating directly and some participating as enablers.

79. As a result of the Defendant's conduct, the Plaintiffs have incurred and/or will continue to incur costs in an amount to be determined at trial.

80. The Defendants' conduct was the result of willful, reckless, conscious and outrageous acts. These intentional acts harmed the health, safety, welfare and reputations of Chris and Jennifer.  The Church's conduct is socially intolerable and Chris and Jennifer give notice of intent to seek exemplary damages.

## FOURTH CLAIM FOR RELIEF
### Harassment

81. The Plaintiffs incorporate by reference the background information and factual allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

82. The Defendants harassed Chris and Jennifer by refusing to honor their repeated requests to be left alone.   Much of the recent harassment was experienced via leadership and members of the local Colorado Mormon congregation under at direction of Larry Peterson who told Chris and Jennifer that he had a "calling from Christ" and was required to keep contacting them to fulfill his calling.

83. The emails Chris and Jennifer received which contained the demands for and in behalf of   the Mormon Church were also harassment.

84. As a result of the Defendant's conduct, the Plaintiffs have incurred and/or will continue to incur costs in an amount to be determined at trial.

85. The Defendants' conduct was the result of willful, reckless, conscious and outrageous acts. These intentional acts harmed the health, safety, welfare and reputations of Chris and Jennifer.   The Church's conduct is socially intolerable and Chris and Jennifer give notice of intent to seek exemplary damages.

## FIFTH CLAIM FOR RELIEF
### Ethnic Intimidation – Violation of Colorado Revised Statute § 18-9-121

86. The Plaintiffs incorporate by reference the background information and factual allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

87. The Defendants' harassing and conspiratorial actions related to the blackmail and extortion that Chris and Jennifer experienced as well as the direct harassment Chris and Jennifer have experienced, were motivated and exacerbated by Chris and Jennifer's current beliefs regarding religion.   The Mormon Church teaches and professes that all need to "embrace the gospel" and that "rejection of the truth" endangers the children that individual may have.   Chris and Jennifer's rejection of Mormonism was a key factor in the Defendants' actions.

88. Chris and Jennifer experienced threats of bodily harm, imprisonment and damage to themselves and their children if they did not give in to the demands of the blackmail and extortion to which the Defendants were conspirators and enablers.

89. The emails that Chris and Jennifer received were harassment and contained threats and demands for and in behalf of the Mormon Church.   Other harassment included threats that all sinners and apostates would be "trampled under the feet of the righteous".

90. These acts constitute a violation of Colorado Revised Statutes § 18-9-121 which provides for civil relief in § 13-21-106.5.

91. As a result of the Defendant's conduct, the Plaintiffs have incurred and/or will continue to incur costs in an amount to be determined at trial.

92. The Defendants' conduct was the result of willful, reckless, conscious and outrageous acts. These intentional acts harmed the health, safety, welfare and reputations of Chris and Jennifer. The Church's conduct is socially intolerable and Chris and Jennifer give notice of intent to seek exemplary damages pursuant to Colorado Revised Statutes § 13-21-106.5.

## SIXTH CLAIM FOR RELIEF

### Negligent Policies, Procedures and Practices

93. The Plaintiffs incorporate by reference the background information and factual allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

94. The Church's policies, procedures and practices were negligent in that they failed to provide the appropriate protections and supervision to prevent the disclosure of protected and privileged information.

95. The Church's policies, procedures and practices were negligent in that they failed to provide the appropriate protections and supervisions to prevent harassment by their clergy, members, employees, etc. of individuals (both members and non-members) who wish to be left alone, even when directly requested.

96. The Church's policies, procedures and practices were also negligent in that they failed to provide the appropriate protections and supervision to ensure that appropriate measures were taken when Jennifer came forward with her memories of abuse.

97. The Church's policies, procedures and practices were also negligent in that they failed to provide properly address the spousal abuse reported to Mormon Church leaders.

98. As a result of the Defendant's conduct, the Plaintiffs have incurred and/or will continue to incur costs in an amount to be determined at trial.

99. The Defendants' conduct was reckless and outrageous and negligent to the health, safety, welfare and reputations of Chris and Jennifer. The Church's conduct is socially intolerable and Chris and Jennifer give notice of intent to seek exemplary damages.

## SEVENTH CLAIM FOR RELIEF

### Intentional Circumventing of Policies, Procedures and Practices to Cover Wrongful Acts

100. The Plaintiffs incorporate by reference the background information and factual allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

101. The Church (including its agents) and Apostle Ballard repeatedly and intentionally circumvented their own existing policies, procedures and practices to cover their own wrongful acts and the acts of the other Defendants.

102. As a result of the Defendant's conduct, the Plaintiffs have incurred and/or will continue to incur costs in an amount to be determined at trial.

103. The Defendants' conduct was the result of willful, reckless, conscious and outrageous acts. These intentional acts harmed the health, safety, welfare and reputations of Chris and Jennifer.  The Church's conduct is socially intolerable and Chris and Jennifer give notice of intent to seek exemplary damages.

## EIGHTH CLAIM FOR RELIEF

### Negligence and Breach of Fiduciary Duty

104. The Plaintiffs incorporate by reference the background information and factual allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

105. The Mormon Church had a "special relationship" with the Plaintiffs.  Knowing that they had protected and privileged communications with the Plaintiffs they had a duty to keep those communications protected and privileged.

106. Furthermore, the Mormon Church, all its clergy, agents, and hierarchal officials are mandatory abuse reporters.

107. The Mormon Church, through its officials and other Mormon Church leaders, breached their mandated duty and a duty of reasonable care by failing to maintain protected and privileged communications; by failing to report their information regarding Bruce Christensen's sexual abuse of Jennifer to civil authorities; and by failing to report the spousal abuse reported to them.

108. The Mormon Church then attempted to cover up and hide their breach of duty.

109. The Mormon Church adopted guidelines for maintaining confidentiality as well as handling victims of child sexual abuse, sex offenders and spousal abuse.  Chris Runyan and Jennifer Centers are members of the class of people whom the guidelines were designed to protect.  The harm Chris and Jennifer suffered as a result of the Church's negligence was contemplated in the formulation of the Church's policies and procedures.

110. Notwithstanding the Church's duty, it failed to train and supervise its hierarchal clergy in the proper implementation of its guidelines, policies and procedures and failed to insure compliance with their guidelines, policies and procedures.

111. The Church knew or in the exercise of reasonable care should have known that its failure to follow appropriate policies and procedures would result in harm.

112. As a result of the Defendant's conduct, the Plaintiffs have incurred and/or will continue to incur costs in an amount to be determined at trial.

113. The Church's conduct was the result of a willful, reckless and outrageous indifference to highly unreasonable risks of harm and conscious indifference to the health, safety, welfare and reputations of Chris and Jennifer.   The Church's conduct is socially intolerable and Chris and Jennifer give notice of intent to seek exemplary damages.

## NINETH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress

114. The Plaintiffs incorporate by reference the background information and factual allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

115. The Mormon Church knew that discussing protected and privileged information and covering up child abuse had the potential for causing harm.

116. The Mormon Church, through its officials and other Mormon Church leaders, breached their mandated duty and a duty of reasonable care by not maintaining protected and privileged communications, by their own harassing actions and by not reporting their information regarding Bruce Christensen's sexual abuse of Jennifer to civil authorities.

117. The Mormon Church then attempted to cover up and hide their breach of duty.

118. The Defendants knew or should have known that their actions in relationship to the Plaintiffs would result in severe emotional distress to the Plaintiffs.

119. The Defendants' conduct was an unconscionable violation of societal norms as well as mandatory obligations, and went so far beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community and resulted in severe emotional distress.

120. The Defendants' intentional conduct produced emotional distress in reckless and deliberate disregard of a high degree of probability that emotional distress would follow.

121. As a result of the Defendant's conduct, the Plaintiffs have incurred and/or will continue to incur costs in an amount to be determined at trial.

122. As a result of the Defendants' conduct the Plaintiffs have suffered and will continue to suffer

physical and emotional pain and dysfunction contributing to the Plaintiffs general, non-economic damage in an amount to be determined at trial.

123. The Defendants' conduct was the result of willful, reckless, conscious and outrageous acts. These intentional acts harmed the health, safety, welfare and reputations of Chris and Jennifer.  The Church's conduct is socially intolerable and Chris and Jennifer give notice of intent to seek exemplary damages.

## TENTH CLAIM FOR RELIEF
### Negligent Infliction of Emotional Distress

124. The Plaintiffs incorporate by reference the background information and factual allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

125. The Mormon Church knew or should have known that discussing protected and privileged information and covering up child abuse had the potential for causing harm.

126. The Mormon Church through its officials and other Mormon Church leaders, had an affirmative duty to properly train and adequately supervise their clergy regarding protected and privileged communications; an affirmative duty to report their information regarding Bruce Christensen's sexual abuse of Jennifer to civil authorities; and an affirmative duty to report the spouse abuse reported to them.

127. The Defendants' negligent actions in relationship to Chris and Jennifer resulted in severe emotional distress.

128. The Defendants' conduct was an unconscionable violation of societal norms as well as affirmative obligations, and went so far beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community and resulted in severe emotional distress.

129. The Defendants' negligent conduct produced emotional distress in reckless disregard of a high degree of probability that emotional distress would follow.

130. As a result of the Defendant's conduct, the Plaintiffs have incurred and/or will continue to incur costs in an amount to be determined at trial.

131. As a result of the Defendants' conduct the Plaintiffs have suffered and will continue to suffer physical and emotional pain and dysfunction contributing to the Plaintiffs general, non-economic damage in an amount to be determined at trial.

## ELEVENTH CLAIM FOR RELIEF
### Employer Liability for Employee's/Agent's Acts,
### Administrative Negligence and Respondeat Superior

132. The Plaintiffs incorporate by reference the background information and factual allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

133. The Mormon Church is vicariously and/or directly liable for compensatory and exemplary damages since it knew or had reason to know of the violations the Plaintiffs experienced.

134. The Mormon Church is liable for exemplary damages in addition to compensatory damages since the Church's conduct was especially egregious and the Church participated as an enabler, by demonstrating willful indifference and subsequently ratifying intentional acts against the Plaintiffs by the Church's acts and contributory actions.   Including but not limited to employment of Bruce Christensen and continuing to place him in positions of trust and leadership in the Church.

135. As a result of the Church's conduct, the Plaintiffs have incurred and/or will continue to incur costs in an amount to be determined at trial.   As a result of the Defendants' conduct the Plaintiffs have suffered and will continue to suffer physical and emotional pain and dysfunction contributing to the Plaintiffs general, non-economic damage in an amount to be determined at trial.

136. The Church's conduct was the result of willful, reckless and outrageous indifference to highly unreasonable risks of harm and conscious indifference to the health, safety, welfare and reputations of Chris and Jennifer.   The Church's conduct is socially intolerable and Chris and Jennifer give notice of intent to seek exemplary damages.

## TWELVETH CLAIM FOR RELIEF
### Estoppel and Fraudulent Concealment

137. The Plaintiffs incorporate by reference the background information and factual allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

138. The Defendants engaged in a plan of action to cover up Jennifer's accusations of sexual abuse and to prevent disclosure, prosecution and civil litigation including, but not limited to:   failure to report incidents of abuse to law enforcement or child protection agencies, denial of abuse, coercion of Jennifer to prevent her redress of the injuries she had experienced, coercion of Chris and Jennifer years later as they conspired, providing information to Shawn Centers and others who attempted to blackmail and extort Chris and Jennifer.

139. Based on these actions, the defendants engaged in fraudulent concealment and are estopped from asserting defense of limitations.

## REQUEST FOR RELIEF
Plaintiff requests the following relief:

140. Judgment in the Plaintiffs' favor;

141. For compensatory and general damages for past, present and future psychological, physical and emotional pain, suffering, distress and injury;

142. For exemplary damages against the Defendant Bruce Christensen;

143. For exemplary damages against the Defendant Larry Peterson;

144. For exemplary damages against the Defendant Apostle Ballard;

145. For exemplary damages against the Defendant "the Mormon Church";

146. For economic damages experienced by the Plaintiffs;

147. For loss of earning capacity in the future;

148. For emotional disfigurement in the past and in the future;

149. For pre-judgment and post-judgment interest at the maximum legal rate;

150. For all special damages including past, present and future medical, counseling, and psychological treatment and all other costs in an amount to be proven at trial;

151. For Plaintiffs' costs of suit;

152. For Plaintiffs' attorney's fees and costs; and

153. For such other and further relief as the Court may deem just and proper.


Date: 12-28-07

Christopher Lee Runyan – Plaintiff
6829 Taft Ct.
Arvada, Colorado 80004


Date: 12-28-07

Jennifer Ann Centers – Plaintiff
6829 Taft Ct.
Arvada, Colorado 80004